IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RHONDA LILLIAN LITTLE NOWAK,
    Petitioner,

vs.                                    Case No. 3:07cv84/RV/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

Now pending is Respondent's motion to dismiss (Doc. 9) the instant petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d). Petitioner responded to the motion to dismiss, contending that because her offense conduct occurred in 1988, prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, the one-year period of limitations for filing a habeas petition may not be applied to her petition (Doc. 12). She additionally suggests she is entitled to equitable tolling of the limitations period (*id.*).

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

The procedural background of this case is established by the state court record (*see* Doc. 1, attachments; Doc. 9, Appendix.). On December 11, 1997, following a jury trial in the Circuit Court in and for Escambia County, Florida, Petitioner was found guilty of one count of first degree murder and sentenced to life imprisonment without the possibility of parole for twenty-five (25) years (Doc. 9, Appx. at 20–24). Petitioner appealed her conviction and sentence to the Florida First District Court of Appeal ("First DCA"). On July 14 1999, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing July 30, 1999 (*id.* at 25; Doc. 1, attached mandate). Nowak v. State, 737 So. 2d 1082 (Fla. 1st DCA July 14, 1999)

(Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On July 13, 2000, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 9, Appx. at 26–44). Following an evidentiary hearing, the trial court denied the motion on January 15, 2003 (*id.* at 45–54). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on May 12, 2004, with the mandate issuing July 6, 2004 (*id.* at 55; Doc. 1, attached mandate). Nowak v. State, 875 So.2d 1244 (Fla. 1st DCA May 12, 2004) (Table).

On March 4, 2005, Petitioner filed a second Rule 3.850 motion (Doc. 9, Appx. at 56–65). The trial court summarily denied the motion on June 15, 2005 (*id*. at 66–88). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on March 13, 2006, with the mandate issuing March 29, 2006 (*id.* at 89; Doc. 1, attached mandate). Nowak v. State, 924 So. 2d 816 (Fla. 1st DCA Mar. 13, 2006) (Table).

On June 8, 2006, Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (Doc. 9, Appx. at 90–96). The trial court summarily denied the motion on July 11, 2006 (*id.* at 98–100). Petitioner did not appeal the decision.

Petitioner filed the instant habeas action on November 16, 2006 (Doc. 1 at 15).

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

The court will first address Petitioner's contention that application of the one-year limitations period to her case constitutes an unconstitutional, retroactive application of the AEDPA because the offense conduct underlying her conviction occurred prior to the effective date of the AEDPA. The

Eleventh Circuit Court of Appeals has ruled that the one-year limitations period may be retroactively applied to state convictions that became final prior to the effective date of the AEDPA. *See* <u>Wilcox v. Florida Dept. of Corrections</u>, 158 F.3d 1209, 1211 (11th Cir. 1998) (one-year limitations period may be retroactively applied to state convictions that became final prior to the effective date of the AEDPA, but those prisoners must be given a reasonable time—within one year from the AEDPA's effective date—to file their section 2254 petitions). It is obvious that if a conviction became final prior to the AEDPA's effective date, the offense conduct occurred prior to that date as well. Thus the logical extension of <u>Wilcox</u> is that the one-year time bar applies to a state conviction that became final after the AEDPA's effective date, even if the offense conduct underlying the conviction occurred prior to that date. In the instant case, Petitioner does not dispute that her conviction became final after the AEDPA's effective date; therefore, the one-year limitations period applies to her section 2254 petition.

Petitioner has not asserted that a government-created impediment to her filing existed, or that any of her claims are based on a right newly recognized by the Supreme Court; however, she appears to claim that the factual predicate for one of her claims could not have been discovered prior to the date her conviction became final. In Ground Seven of her federal petition, Petitioner claims that several years after her trial, she received letters from her co-defendant, Kenneth "Mike" Penton, who testified against her at trial, suggesting that his trial testimony was motivated by a self-serving desire to save himself rather than a desire to relay events that actually occurred (*see*. Doc. 1, Ground Seven and supporting memorandum, Ground Seven). Petitioner alleges that Mr. Penton testified at trial that Petitioner was primarily responsible for the murder, and he (Penton) was a mere puppet acting under her control, whereas Penton's letters to her reveal that his actions were the result of his own free will (*id*.). As factual support for her claim, Petitioner attaches a copy of the last letter she received from Mr. Penton (Doc. 1, supporting memorandum, Exhibit 7).

Petitioner mischaracterizes Mr. Penton's statements. The following is the relevant excerpt from the letter:

> You said in your letter I was out to get you in '96. When arrestted [sic] you also started slinging mud on me. Rimmer [the prosecutor] just happened to want you more badly than me. His first plea bargain to me was plead to 1st degree, accept 25 to life, testify against you, and in return the state would not seek the death penalty on me. Through my lawyer, I told the state that 25 to life and death row was one in [sic] the same, one just took longer, and that I'd take my chances in trial even though they had full confessions from me unless they dropped the degree to at least 2nd. Taking them to Junior's remains & testifying against you were their terms, I was just saving my ass, just as you would've if the roles were reversed. I didn't even know what 2nd degree carried, I still thought I'd get a lot of time. I didn't know until later that in '88 it carried up to a max of 12 years & that I could be out in less then [sic] 6 with gaintime for work & good behavior.

Case No.: 3:07cv84/RV/EMT

(Doc. 1, Ex. 7).  Mr. Penton does not state or suggest, in either the letter attached to the instant federal petition or the letters from Mr. Penton submitted by Petitioner to the state court in support of her claims of newly discovered evidence (*see* Doc. 9, Appx. at 191–203), that he testified falsely to save himself, nor does he admit that he had more of a role or more culpability in the murder than he testified to at trial.  Mr. Penton simply states that the prosecutor wanted to prosecute Petitioner more than him, that he (Penton) was just saving himself by plea bargaining with the State, and that Petitioner would have done the same thing if the roles were reversed.  Additionally, the fact that Mr. Penton was negotiating a plea agreement with the State at the time he testified at Petitioner's trial was not unknown to Petitioner or the jury.  Both the prosecutor and Petitioner's counsel questioned Mr. Penton extensively during Petitioner's trial about plea negotiations between Mr. Penton and the State, including the plea offer that was currently on the table, as well as Mr. Penton's role in the murder (*see* Doc. 9, Appx. at 108–55).  Petitioner has failed to show that the fact that Mr. Penton had a pending plea offer from the State and the fact that one of the terms was that he would testify against Petitioner, was not available to Petitioner at trial.[1]  Likewise she has failed to show that the facts concerning Mr. Penton's actual role in the murder were not available at trial.  Additionally, Mr. Penton's statement that the prosecutor "want[ed] you [Petitioner] more badly than me [Penton]" was not new information because the victim's mother testified at Petitioner's trial that she told the prosecutor that she did not object to Mr. Penton's charges being reduced, but she told him she adamantly objected to Petitioner's charges being reduced (*id*. at 103–07).  Because these facts were available to Petitioner at the time of her trial in 1997, Petitioner cannot show that she could not have discovered the factual predicate of her claim prior to the date her conviction became final.  Therefore, the appropriate statutory trigger for the limitations period for filing her federal habeas petition is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct appeal.

Petitioner's conviction became final for purposes of the AEDPA on October 13, 1999, ninety (90) days after the appellate court issued its decision affirming her conviction (*see* Doc. 9 at 25). See Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273, 1274–75 (11th Cir. 2006) (judgment of conviction becomes "final" on the date in which the United States Supreme Court either issues a decision on the merits of the petitioner's direct appeal or denies certiorari, or after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari, which begins to run on the date of the appellate court's affirmance of the conviction, not the date of the appellate court's mandate) (citing Bond v. Moore, 309 F.3d 770, 774 (11th Cir.

---

[1] According to the state court record, the plea offer was formally made by the prosecutor on November 24, 1997, prior to Petitioner's trial, but it was not accepted by Mr. Penton until January 6, 1998, after Petitioner's trial (*see* Doc. 9, Appx. at 80–81).

Case No.: 3:07cv84/RV/EMT

2002)). Thus, Petitioner's one-year limitations period began to run on October 13, 1999, and expired one year later on October 13, 2000.

Petitioner may be entitled to review of her petition if the limitations period was tolled pursuant to statutory tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that Petitioner filed a motion for post-conviction relief in the state courts on July 13, 2000 after 273 days of the one-year limitations period had expired (*see* Doc. 9 at 24–44). That motion remained pending until July 6, 2004, the date of the First DCA's mandate affirming the trial court's decision (*see* Doc. 1, attached Mandate issued July 6, 2004). *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court). Petitioner filed her next post-conviction application on March 4, 2005; however, the one-year limitations period had already expired on October 7, 2004, ninety-two (92) days after issuance of the mandate in the first post-conviction proceeding. Because Petitioner's second and subsequent post-conviction applications were filed after the federal limitations period expired, they did not toll the limitations period. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000).

In her response to the motion to dismiss, Petitioner suggests she is entitled to equitable tolling of the limitations period because her "mental conditions" hindered her ability to "maintain court deadlines or procedure applications" (Doc. 12 at 3). "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*). "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (citing Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, --- U.S. ---, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007)). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. Wade, *supra*; Drew, *supra*.

Initially, although Petitioner makes a conclusory assertion that her "mental conditions" hindered her ability to meet court deadlines, she provides no specific reason or explanation of how her mental condition actually prevented her filing her federal petition within the one-year limitations period. Additionally, she does not allege that she is or ever was actually mentally incompetent or completely unable to understand the nature and object of post-conviction proceedings and to present her case for post-conviction relief in a rational manner. *See* Smith v. Newsome, 876 F.2d 1461, 1465 (11th Cir. 1989) (not every mental deficiency amounts to mental incompetence) (citation omitted). Because Petitioner does not allege how her alleged mental condition actually prevented her from filing a timely federal petition, and she does not allege that the delay in filing the instant petition was due to her actual mental incompetence, nor do the facts suggest such, this court finds that Petitioner has failed to present extraordinary circumstances warranting equitable tolling. *See* Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003) (district court did not abuse its discretion in denying equitable tolling where petitioner provided no reason why his alleged medical condition barred him from filing federal habeas petition on time); Fisher v. Gibson, 262 F.3d 1135, 1143–45 (10th Cir. 2001) (petitioner's mere allegations of incompetency at the time of his pleas in 1992 and 1994, all of which significantly pre-dated the April 24, 1997 grace period for filing federal petitions for pre-AEDPA convictions, did not suffice as extraordinary circumstances warranting equitable tolling of limitations period).

Additionally, Petitioner has failed to show she made diligent efforts to timely file her federal petition. She has not provided details of any specific actions she took toward filing the petition, nor does she allege that she took any efforts to determine when the relevant limitations period began to run. In the absence of any connection between Petitioner's alleged mental condition and her untimely filing, she has failed to show she is entitled to equitable tolling.

As Petitioner's federal petition is untimely, and she has failed to demonstrate her entitlement to equitable tolling, or that application of any other exception to the time bar is warranted, this court concludes that the instant petition should be dismissed as untimely pursuant to 28 U.S.C. § 2244(d).

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (Doc. 9) be **GRANTED**.

2. That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 17th day of September 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No.: 3:07cv84/RV/EMT

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**